

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
J.N Aug 29, 2008
AUG 2 9 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| SARA BRIDEWELL, RANDY MANUEL, LISA RHODES, ) ) ) Plaintiffs, ) ) vs. ) ) KEVIN EBERLE, Star No. 20817, ) BRIAN FORBERG, Star No. 21249, ) Defendants. ) | 08cv4947<br>JUDGE LEINENWEBER<br>MAG. JUDGE DENLOW |

## COMPLAINT

### COUNT I

Plaintiffs, Sara Bridewell, Randy Manuel, and Lisa Rhodes, by their attorney, John W. Wyatt, complaining of defendants, Kevin Eberle, Star No. 20817 and Brian Forberg, Star No. 21249, allege as follows:

1. This cause of action arises for damages and other appropriate relief under 42 U.S.C. 1983, in that defendants, who are employed as police officers by the City of Chicago, Illinois, violated plaintiffs' civil rights by unlawfully seizing and detaining them in violation of the Fourth Amendment to the United States Constitution.

2. Jurisdiction is conferred upon the district court by 28 U.S.C. 1331(a) and 28 U.S.C.1343 (a)(3).

3. At all times relevant to this cause of action, Sara Bridewell, hereinafter referred to as "plaintiff Bridewell", Randy Manuel, hereinafter referred to as "plaintiff Manuel", and Lisa

Rhodes, hereinafter referred to as "plaintiff Rhodes", did and do reside in the Chicago, Cook County, Illinois.

4.  At all times relevant to this cause of action, Kevin Eberle, Star No. 20817, hereinafter referred to as "defendant Eberle" and Brian Forberg, Star No. 21249, hereinafter referred to as "defendant Forberg", were employed as police officers by the City of Chicago, Cook County, Illinois.

5.  On or about September 3, 2006, at approximately 6:20 p.m., in an alley located to the north of 1216 East 69th Street, Chicago, Cook County, Illinois, Walter Chandler, died from a gunshot wound to the head.

6.  Immediately prior to his death, Walter Chandler had been involved in an automobile accident at 1307 East 69th Street, Chicago, Cook County, Illinois, where he had struck plaintiff's Rhodes' vehicle and left the scene without providing his driver's license number or any information.

7.  Upon learning that Walter Chandler had been involved in an automobile accident with plaintiff Rhodes, defendants caused plaintiffs Rhodes, Bridewell, and Manuel along with Anthony Watkins to be taken to Area 2 Police Station in Chicago, Cook County, Illinois.

8.  Plaintiffs never consented to being taken to Area 2 Police Station.

9.  At Area 2 Police Station, Manuel and Anthony Watkins were confined in locked rooms and handcuffed to a wall.

10. Plaintiffs Rhodes and Bridewell were confined in locked room.

11. At Area 2 Police Station, plaintiffs were interrogated repeatedly.

12. At no time prior to or during their detention and questioning were plaintiffs shown arrest warrants.

13. Custodial questioning on less than probable cause for a full fledged arrest violates the Fourth Amendment to the United States Constitution's guarantee that the rights of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

14. As a direct and proximate result of the above-described unlawful acts of defendants, all committed under color of their authority as City of Chicago police officers and while acting in that capacity, plaintiffs were deprived of rights and immunities provided them under the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. 1983.

15. The willful, malicious, reckless and intentional wrongful acts of defendants against plaintiffs were committed under circumstances which require the imposition of exemplary damages in order to deter other police officers from committing the same wrongful acts.

**WHEREFORE**, plaintiffs Bridewell, Manuel and Rhodes pray for judgment against defendants Eberle and Forberg, jointly an severally as follows:

A) General damages in the sum of $100,000.00;

B) Exemplary damages in the sum of $500,000.00;

C) Award of attorney fees;

D) For such other relief as the Court deems just.

## COUNT II

Plaintiffs reallege paragraphs 1 through 15 of Count I of this complaint as paragraphs 1 through 15 of Count II of this complaint.

16. At the time of his death, Walter Chandler was driving a Ford Escape Sport utility vehicle, hereinafter referred to as a "Ford Escape".

17. Lying in the console of the Ford Escape next to Walter Chandler was a Ruger 9mm semi-automatic pistol containing nine (9) live 9mm cartridges.

18. Lying on the front passenger seat was an empty magazine clip.

19. Blood could have been on Walter Chandler's hand and on the Ruger 9mm pistol.

20. Plaintiffs Rhodes, plaintiff Bridewell and Anthony Watkins after being taken to Area 2 Police Station were confined in separate room and continuously questioned by defendants for a period exceeding thirty-six (36) hours.

21. Plaintiff Manuel was also confined in a separate room but he refused to talk with defendants.

22. Plaintiff Rhodes told defendants more than one hundred (100) times that she did not possess a gun at the time of Walter Chandler's death and that she never saw plaintiff Bridewell or plaintiff Manuel or Anthony Watkins with a gun, but defendants refused to believe her.

23. Plaintiff Rhodes told defendants more than one-hundred (100) times that she did not shoot Walter Chandler and that she never saw plaintiff Bridewell or plaintiff Manuel or Anthony Watkins shoot Walter Chandler, but defendants refused to believe her.

24. Plaintiff Rhodes told defendants more than five (5) times that she heard a shot coming from the direction of Walter Chandler and that she thought Walter Chandler was shooting at her, but defendants refused to believe her.

25. Defendant Forberg intentionally deceived plaintiff Rhodes by telling her that Walter Chandler had three bullet holes in his head. Defendant Forberg said, "...eight feet away, boom, boom, boom, eight feet away. And you don't see shit. And you expect anyone to believe that?"

26. Defendants intentionally deceived plaintiff Rhodes by telling her that her polygraph test indicated that she was not being truthful.

27. Plaintiff Rhodes who knew she had truthfully answered the questions asked by the polygraph examiner became distraught and confused.

28. While returning to Area 2 Police Station after completing the polygraph examination, defendants told plaintiff Rhodes that they knew plaintiff Bridewell was a "hot head".

29. Defendants began to suggest that plaintiff Bridewell must have shot Walter Chandler because she was on the passenger side of the Ford Escape.

30. Plaintiff Rhodes who is the mother of four (4) children, was told by defendant Forberg that if she did not tell who shot Walter Chandler, she would be spending her future in the penitentiary and not with her children.

31. Even though plaintiff Rhodes had not seen anyone shoot Walter Chandler, but after having been confined at Area 2 Police Station for thirty-six (36) hours, after having been told repeatedly by defendants that she had to have seen who shot Walter Chandler, after having been told repeatedly that she was lying and fearing that she would go to prison, plaintiff Rhodes felt compelled to lie and say she saw plaintiff Bridewell shoot Walter Chandler.

32. During the entire time plaintiff Rhodes was illegally detained, defendants never told her that she was free to leave.

33. Because of the intimidating, harassing and coercive interrogations by defendants for more than thirty-six (36) hours, plaintiff Rhodes' will was overcome and she was coerced into lying and telling defendants that she had seen plaintiff Bridewell shoot Walter Chandler.

**WHEREFORE**, plaintiffs Rhodes and Bridewell pray for judgment against defendants Eberle and Forberg, jointly and severally, as follows:

A)   General damages in the sum of $500,000.00;

B)   Exemplary damages in the sum of $1,000.000.00;

C)   Award of attorney fees; and,

D)   For such other relief as the Court deems just.

## COUNT III

Plaintiffs reallege paragraphs 1 through 33 of Count II of this Complaint as paragraphs 1 through 33 of Count III of this Complaint:

34. Anthony Watkins who was with plaintiffs Rhodes, Bridewell and Manuel when they were taken to Area 2 Police Station was confined in a room and handcuffed to a wall.

35. During his interrogations by defendants, Anthony Watkins told defendants that he had seen Walter Chandler holding a gun.

36. Anthony Watkins told defendants that he knew Walter Chandler shot the gun because he heard the gunshot, but defendants refused to believe him.

6

37.     Anthony Watkins told defendants numerous times that he did not possess a gun at the time of Walter Chandler's death and that he never saw any of the plaintiffs with a gun, but defendants refused to believe him.

38.     On numerous occasions during his interrogations, Anthony Watkins told defendants that he did not shoot Walter Chandler and that he never saw any of the plaintiffs shoot Walter Chandler, but defendants refused to believe him.

39.     Defendant Forberg intentionally deceived Anthony Watkins by telling him that Walter Chandler had three (3) bullet holes in his head. Upon being told Walter Chandler had three holes in his head, Anthony Watkins replied, "he had three holes in his head. I swear I didn't know that".

40.     Defendant Forberg told Anthony Watkins that plaintiff Bridewell was a "hot head".

41.     During one of several interrogations, after being asked if plaintiff Bridewell shot Walter Chandler, Anthony Watkins said, "it wasn't Randy (plaintiff Manuel) cause Randy ran behind me. So it had to be Sara (plaintiff Bridewell). That's basically it". Defendant Forberg replied, "you were there, you tell us…" Anthony Watkins replied, "Sara was on the passenger side. It was Sara". Defendant Forberg responded, "I don't know if you like it here or what". Anthony Watkins replied, "No, I don't". Later during the same interrogation, defendant Forberg said, "we told you what part you got to get good at. What part you had better start remembering…so you in here until you go where you need to go. Okay?"

42.     Even though Anthony Watkins had not seen anyone shoot Walter Chandler, but after having been confined at Area 2 Police Station for thirty-six (36) hours, after having been told repeatedly by defendants that he had to have seen who shot Walter Chandler, after having

7

been repeatedly told that he could not leave Area 2 Police Station until he told defendants who shot Walter Chandler, Anthony Watkins felt compelled to lie and say that he saw plaintiff Bridewell shoot Walter Chandler.

43.  Defendants never told Anthony Watkins that he was free to leave Area 2 Police Station.

44.  Because of the intimidating, harassing and coercive interrogations by defendants, Anthony Watkins' will was overcome and he was coerced into lying and telling defendants that he had seen plaintiff Bridewell shoot Walter Chandler.

**WHEREFORE,** plaintiffs Bridewell prays for judgment against defendants Eberle and Forberg, jointly and severally, as follows:

A) General damages in the sum of $500,000.00;

B) Exemplary damages in the sum of $1,000,000.00;

C) Award of attorney fees; and,

D) For such other damages as the Court deems just.

## COUNT IV

Plaintiffs reallege paragraphs 1 through 44 of Count III of this Complaint as paragraphs 1 through 44 of Court IV of this Complaint:

45.  After being taken to Area 2 Police Station, plaintiff Manuel was confined in a room and handcuffed to a wall.

46.  Plaintiff Manuel refused to give any statements to defendants regarding Walter Chandler.

47.  Without probable cause to detain or arrest plaintiff Manuel, defendant Forberg in an attempt to punish plaintiff Manuel for refusing to give any statements, caused an Arrest

8

Report to be issued against plaintiff Manuel charging him with First Degree Murder. (Exhibit 1, Arrest Report)

48. Knowing that there was no evidence to support an arrest for First Degree Murder, plaintiff Manuel was released from Area 2 Police Station on September 4, 2006, after being unlawfully detained for twenty-four (24) hours.

**WHEREFORE,** plaintiff Manuel prays for judgment against defendants Eberle and Forberg, jointly and severally, as follows:

A) General damages in the sum of $100,000,00;

B) Exemplary damages in the sum of $500,000,00;

C) Award of attorney fees, and,

D) For such other relief as the Court deems just.

## COUNT V

Plaintiff reallege paragraphs 1 through 48 of Count IV of this Complaint as paragraphs 1 through 48 of Count V of this Complaint:

49. On September 3, 2006, when defendants observed Walter Chandler's body, Walter Chandler was seated in the driver's seat slumped over with his head resting on the steering wheel. Defendants observed blood flow from Walter Chandler's face and head in a downward direction of flow onto the steering wheel, driver's seat and driver's side floor board. There was very little blood splattered on the inside of the driver's side door panel and there was very little blood splattered on the passenger side of the Ford Escape.

50. A bullet and spent cartridge were recovered from the ground outside of the Ford Escape. After a firearms analysis, it was determined that the bullet and spent cartridge were fired from the Ruger 9mm that was recovered from Walter Chandler's Ford Escape.

51. Blood was swabbed from the Ruger 9mm and swabbed from Walter Chandler's hand. After a DNA analysis, it was determined that the blood on the Ruger 9mm and on Walter Chandler's hand was Walter Chandler's blood.

52. The hands of plaintiffs Bridewell, Rhodes and Manuel along with the hands of Anthony Watkins and Walter Chandler were swabbed for gun powder residue. Only Walter Chandler's hands tested positive for the presence of gun powder residue which indicated he fired a gun.

53. On September 4, 2006, Dr. Humilier, the medical pathologist who examined Walter Chandler's body, saw no evidence of close range firing about the wound of entrance (which is the area above the right ear).

54. On or about August 20, 2008, upon re-examining data retained from the September 4, 2006, post-mortem examination of Walter Chandler, Dr. Humilier discovered that he had failed to notice soot around Walter Chandler's right ear. Upon seeing the soot during the re-examination, Dr. Humilier realized that the barrel of the gun has to be either on Walter Chandler's neck or extremely close to Walter Chandler's neck. Consequently, there was evidence of close range firing about the wound of entrance.

55. Plaintiff Rhodes, Bridewell and Anthony Watkins told defendants that plaintiff Rhodes asked Walter Chandler three (3) times, "you know, you hit my car" before Walter Chandler nodded his head. Plaintiff Rhodes, Bridewell and Anthony Watkins told defendants that Walter Chandler appeared to be "high".

56. A toxicologic analysis of Walter Chandler's body revealed that it was positive for ethanol (peripheral blood) in the amount of 293 mg/dl and it was positive for ethanol (vitreous humor) in the amount of 237 mg/dl.

57. On September 3, 2006, when Walter Chandler was driving the Ford Escape, his blood alcohol level of 293 mg/dl exceeded the legal limit by a factor of almost four (4).

58. Plaintiff Bridewell noticed Walter Chandler holding the gun in his hand between his legs. Plaintiff Bridewell yelled, "he's got a gun", and ran.

59. Anthony Watkins told defendants he saw Walter Chandler with a gun and heard a gunshot coming from the direction of Walter Chandler.

60. Plaintiff Rhodes told defendants she heard a gunshot and thought Walter Chandler was shooting at her.

61. All the physical evidence when considered with the observations of plaintiffs Bridewell and Rhodes and the observations of Anthony Watkins strongly infer that Walter Chandler mishandled the Ruger 9mm he was holding and shot himself.

62. Defendants, on September 4, 2006, acting upon Dr. Humilier's mistaken opinion that there was no evidence of close range firing, were determined to quickly solve the "homicide" of Walter Chandler.

63. Given the position of Walter Chandler's body in the Ford Escape, given the fact that there was very little blood anywhere except right in the area where Walter Chandler was lying, given the position of the Ruger 9mm and given the blood on the Ruger 9mm and Walter Chandler's hand, seasoned homicide detectives would not have ruled out the possibility that Walter Chandler shot himself.

64. Seasoned homicide detectives would have waited for the results of physical tests from the evidence recovered from the scene before rushing to an opinion that plaintiffs, along with Anthony Watkins, were all liable for Walter Chandler's death or at lease one (1) of them was liable.

65. Having come to an opinion that plaintiff Bridewell was a "hot head" and having learned that plaintiff Bridewell was on the passenger side of the Ford Escape, defendants through their intimidating and suggestive interrogations, coerced plaintiff Rhodes and Anthony Watkins into saying they saw plaintiff Bridewell shoot Walter Chandler.

66. Having caused plaintiff Rhodes and Anthony Watkins to lie and say they saw plaintiff Bridewell shoot Walter Chandler, defendants caused plaintiff Bridewell to be wrongfully arrested for the murder of Walter Chandler.

67. In September, 2006, the Grand Jury of the Circuit Court of Cook County, Illinois, indicted plaintiff Bridewell for First Degree Murder in Case No. 06 CR 22756.

68. Plaintiff Bridewell has been continually incarcerated since her unlawful detention on September 3, 2006.

69. Throughout numerous intimidating and coercive interrogations by defendants, plaintiff Bridewell always claimed that she never shot Walter Chandler.

70. Because defendants caused plaintiff Bridewell to be incarcerated, plaintiff has been denied the love and affection of her children.

71. Over the past two (2) years, plaintiff has often been depressed and suffered from anxiety knowing that she could be imprisoned for a period in excess of twenty (20) years for a crime she never committed.

**WHEREFORE,** plaintiff Bridewell prays for judgment against defendants Eberle and Forberg, jointly and severally, as follows:

A. General damages in the sum of $5,000,000.00;

B. Exemplary damages in the sum of $20,000,000.00;

C. Attorney fees in the sum of $30,000,00;

12

D.  For such other relief as the Court deems just.

_____
John W. Wyatt
Plaintiff's Attorney

## CERTIFICATION

We, the plaintiffs, certify that the statements contained in this Complaint are true and correct.

_____
Lisa Rhodes

_____
Sara Bridewell

_____
Randy Manuel

John W. Wyatt, No. 6197191
835 E. 49th Street, Suite 1
Chicago, IL 60615
(773) 536-0570

**CHICAGO POLICE DEPARTMENT**
# ARREST REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11. 420C(REV. 6/30)

**STATUS COMPLETED- RELEASE W/O CHARGING**

CB #: ~~216~~
IR #:
YD #:
RD #: HM579763
EVENT #: 0624616256

## ARREST REPORTING

### OFFENDER
Name: MANUEL, Randy
Res: 7821 S Phillips Ave, #2
   Chicago, IL  60649
   773-221-6360
Empl: South Shore High
   Student
DOB: 24 May 1990
AGE: 16 years
POB: Illinois
SSN: 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
ARMED WITH

Beat: 421

Male
Black
5' 07"
130 lbs
Brown Eyes
Black Hair
Short Hair Style
Dark Complexion

Marks:  Tattoo Five on Left Hand
         Tattoo Duce on Right Hand

NO PICTURE AVAILABLE

### INCIDENT
Arrest Date: 03 September 2006 23:05      TRR Completed? No
   Location: 727 E 111th St                Beat: 531
      Chicago, IL  60628
      280 - Police Facility/Veh Parking Lot
Holding Facility: District 005 Male Lockup
Resisted Arrest?  No
Incident Category: Homicide By Vehicle,  Etc...

Total No Arrested: 2       Co-Arrests         Assoc Cases
                           16648463
Dependent Children? No     DCFS Ward ? No

### CHARGES
1   Offense As Cited   720 ILCS 5.0/9-1-A-1
                       MURDER - FIRST DEGREE
                       Class  M - Type  F

Victim
Chandler, Walter

### RECOVERED NARCOTICS
NO NARCOTICS RECOVERED

### WARRANT
NO WARRANT IDENTIFIED

Print Generated By: POPIELEWSKI, Michele ( IL016SABGF )    Page 1 of 7    19 JUN 2008 07:00



**Chicago Police Department - ARREST Report**

CB #: 16648289
MANUEL, Randy

## ARREST REPORTING

**VICTIM**

NON-OFFENDER(S)

| | | |
|---|---|---|
| Name: CHANDLER, Walter | Male | Injured? Yes    Deceased? Yes |
| Res: 14408 S Avalon Ave | Beat: 3100  Black | |
| Dalton, IL | DOB: 12 September 1953 | Hospitalized? No |
| | Age: 52 years | |
| | | Treated and Released? No |

**Chicago Police Department - ARREST Report**

CB #: 16848289

MANUEL, Randy

### ARREST REPORTING

#### ATTESTING OFFICER

I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief.

Attesting Officer:   #21249   FORBERG, B P (PC0M174)   04 SEP 2006 22:31

#### ARRESTING OFFICER(S)

| | | | Beat |
|---|---|---|---|
| 1st Arresting Officer: | #19964 | WARE, C D (PC0I042) | 0331 |
| 2nd Arresting Officer: | #14164 | TROGLIA, J T (PC0Y618) | 0331 |

#### APPROVING SUPERVISOR

**Chicago Police Department - ARREST Report**

CB #: 16648289
MANUEL, Randy

**ARREST REPORTING**

GUN SHOT WOUND TO THE HEAD.
**Comments:** Gun Shot Wound To The Head

**NO ARRESTEE VEHICLE INFORMATION ENTERED**

**Confiscated Properties:**
All confiscated properties are recorded in the e-Track System. This system can be queried by the Inventory number to retrieve all official court documents related to evidence and/or recovered properties.

PROPERTIES INFORMATION FOR MANUEL, Randy, NOT AVAILABLE IN THE AUTOMATED ARREST SYSTEM.

(The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following)

EVENT#16256 IN SUMMARY: THE ABOVE subject was taken into custody after being implicated as participant in the above homicide. SUBJECT'S NAME CHECK CLEAR. NO INVESTIGATIVE ALERTS, NO WARRENTS.

**Desired Court Date:** 05 September 2006
**Branch:** 66    2600 S CALIFORNIA - Room 101
**Court Sgt Handle?** No
**Initial Court Date:**
**Branch:**    - Room
**Docket #:**

**BOND INFORMATION NOT AVAILABLE**

**Chicago Police Department - ARREST Report**

CB #: 16648289
MANUEL, Randy

## ARREST PROCESSING REPORT

### MOVEMENT LOG

MOVEMENT LOG INFORMATION NOT AVAILABLE

**Watch Commander Comments:**

**REL w/o CHARGING:** released w/out charging investigation does not reveal enough evidence to support charging at this time

### ARRESTEE PROCESSING PERSONNEL

| | | | Beat |
|---|---|---|---|
| Assisting Arresting Officer: | #439 | CARTER, E M (PC0L854) | 0360 |

### APPROVAL PERSONNEL

Beat

Release w/o Charging Appvl: #231   RIGGENBACH, C R(PC0P200) 04 SEP 2006 22:38