**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SARA BRIDEWELL, RANDY MANUEL, and LISA RHODES, | |
| Plaintiffs, | Case No. 08 C 4947 |
| v. | Hon. Harry D. Leinenweber |
| KEVIN EBERLE and BRIAN FORBERG, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion of Defendants Kevin Eberle and Brian Forberg to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs indicated in their opposition brief that they intend to dismiss voluntarily Counts III and V of the Complaint. Accordingly, Counts III and V are dismissed with prejudice. For the following reasons, Defendant's Motion with respect to the remainder of the Complaint is granted in part and denied in part.

**I. BACKGROUND**

Plaintiffs Patricia Bridewell ("Bridewell"), Randy Manuel ("Manuel") and Lisa Rhodes ("Rhodes")(collectively, the "Plaintiffs"), filed the instant action against Chicago Police Officers Eberle and Forberg (hereinafter, "Defendants") in connection with their detention and interrogation at a Chicago

police station on September 3, 2006. Plaintiffs bring federal claims under 42 U.S.C. § 1983 for false arrest, unlawful seizure, false imprisonment and coercive interrogation.

On September 3, 2006, Walter Chandler ("Chandler") died from a gunshot wound to his head while sitting in his car in an alley on Chicago's south side. Upon learning that Chandler had been involved in an automobile accident with Rhodes shortly before his death, Defendants caused Plaintiffs Rhodes, Bridewell and Manual to be taken, without their consent, to the Area 2 Police Station where each Plaintiff was confined to a separate room and interrogated.

The Complaint mentions a confrontation between Plaintiffs and Chandler at Chandler's car after the car accident and immediately before Chandler died. The Complaint does not specify how the confrontation came about, what exactly transpired, or when Defendants became aware of the confrontation. However, Defendants must have been aware of the confrontation at some point during Plaintiffs' interrogations because the Complaint alleges that both Rhodes and Anthony Watkins ("Watkins"), a non-party who was taken to the police station along with Plaintiffs, discussed the confrontation with Defendants during their interrogations. In the course of discussing the confrontation with Defendants, Rhodes made a statement inculpating Bridewell in Chandler's death, as discussed more fully below.

At the police station, Plaintiffs were confined to separate locked rooms and interrogated. The Complaint contains no detail regarding Defendants' interrogation of Bridewell but it states that Manuel refused to give any statements to Defendants. Forberg prepared an Arrest Warrant for Manuel but Manuel was released from the police station the following day, September 4, 2006.

Rhodes was more forthcoming during her interrogation. Rhodes told Defendants repeatedly that she did not possess a gun at the time of Chandler's death and that she never saw Bridewell or Manuel with a gun, that she did not shoot Chandler, and that after the confrontation she heard a shot coming from the direction of Chandler and thought Chandler was shooting at her. Ultimately, though, after 36 hours at the police station, Rhodes told Defendants that she had seen Bridewell shoot Chandler during the confrontation.

According to the Complaint, Rhodes' statement was false and she made it only because her will was overborne by various statements Defendants made to her during her interrogation. Defendants stated that they did not believe Rhodes when she said she did not know who shot Chandler. Defendants falsely told Rhodes that Chandler had three gunshot wounds to his head (he only had one) and that Rhodes had failed her polygraph exam (she had not). Defendants also implied that they believed Bridewell shot Chandler

and that Bridewell was a "hot head." Defendants told Rhodes that if she did not cooperate she might go to jail.

Rhodes and Manuel were never charged with a crime in connection with Chandler's death. Bridewell currently is awaiting trial for the murder of Chandler.

## II.  DISCUSSION

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations in the Complaint as true, and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir., 1993). "A complaint must always . . . allege 'enough facts to state a claim to relief that is plausible on its face.' " *Limestone Development Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir., 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To avoid dismissal, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir., 2007) (citing *Bell Atlantic*, 550 U.S. 544).

### A. False Arrest, Unlawful Seizure and False Imprisonment on Behalf of All Plaintiffs

Plaintiffs bring claims under § 1983 for false arrest on behalf of Manuel, the only Plaintiff who formally was arrested,

unlawful seizure on behalf of Bridewell and Rhodes who were detained and interrogated at the police station, and on behalf of all Plaintiffs for false imprisonment. Plaintiffs assert in their opposition brief that the Complaint contains state law claims for false arrest and false imprisonment on behalf of Manuel. Plaintiffs are wrong; the Complaint contains no state law claims and Plaintiffs cannot amend their Complaint in a brief. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir., 1984).

Plaintiffs' § 1983 claims for false arrest, unlawful seizure and false imprisonment turn on whether or not the arrest and seizures were supported by probable cause. *See Hayes v. Florida*, 470 U.S. 811 (1985) (even where a suspect is not formally arrested, detention and interrogation at the police station requires probable cause); *Dunaway v. New York*, 442 U.S. 200 (1979). If probable cause existed, these claims fail as a matter of law. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir., 2006); *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1113 (7th Cir., 1997); *Jones v. Village of Villa Park*, 815 F.Supp. 249, 253 (N.D.Ill., 1993).

Probable cause exists "if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to conclude that the suspect has committed, is committing, or was about to commit a crime." *Devenpeck v. Alford*, 543 U.S. 146, 151 (2004). Probable cause turns on the information

known to the police officer at the time of the arrest, not on information that comes to light at some later time. *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir., 1994) (citing *Hunter v. Bryant*, 502 U.S. 224 (1991)). "[I]t is well-settled that . . . the existence of probable cause is a fact-based inquiry that is more properly resolved on summary judgment*." Gay v. Robinson*, No. 08-4032, 2009 WL 196407, at *3 (C.D.Ill., 2009).

The Complaint identifies only two facts known to Defendants at the time they took Plaintiffs to the police station for questioning: (1) Chandler had been involved in a traffic collision with Rhodes prior to his death, and (2) Chandler died in his car from an apparent gunshot wound to the head. These two facts are insufficient for the Court to conclude at this early stage of the litigation that probable cause existed for the arrest and seizure of Plaintiffs. While it is entirely possible that additional facts establishing probable cause were known to Defendants at the time they arrested Plaintiffs, the Complaint does not so allege. Accordingly, Defendants' Motion is denied with respect to Plaintiffs' claims in Counts I and IV for false arrest, unlawful seizure and false imprisonment.

### B. Coercive Interrogation on Behalf of Plaintiffs Rhodes and Bridewell

Count II of the Complaint is confusing. It appears to assert a Fourteenth Amendment due process claim for coercive interrogation on behalf of Bridewell and Rhodes, but contains allegations

relating only to the interrogation of Rhodes. It alleges that because of Defendants' coercive interrogation, "Rhodes' will was overcome and she was coerced into lying and telling defendants that she had seen plaintiff Bridewell shoot Walter Chandler." The Court will address Count II with respect to Rhodes and Bridewell separately.

### *1. Coercive Interrogation of Rhodes*

Rhodes claims that her interrogation was improperly coercive, and as a result, she gave a false statement that inculpated Bridewell. Rhodes does not allege that Defendants physically harmed her or were verbally abusive during the interrogation, but rather that they used psychological pressure to coerce her into cooperating. Specifically, the Complaint alleges that Defendants refused to believe Rhodes when she said she did not know who shot Chandler; Defendants made several deceptive statements to Rhodes about the specific wounds suffered by Chandler and the results of her polygraph test; Defendants told Rhodes that if she did not cooperate and identify Chandler's killer she may be incarcerated, which necessarily would separate her from her children; and Defendants never spontaneously told Rhodes she was free to leave the police station. By the allegations of the Complaint this was nothing more than a standard police interrogation and did not violate Rhodes' constitutional rights. *See Chavez v. Martinez*, 538 U.S. 760, 774-75 (2003); *Latta v. Chapala*, 221 Fed.Appx. 443, 446

(7th Cir., 2007); *Slagel v. Shell Oil Refinery*, 811 F.Supp. 378, 382 (C.D.Ill., 1993) ("citizens do not have a constitutional right to courteous treatment by the police"); *Gonzalez v. Tilmer*, 775 F.Supp. 256, 261 (N.D.Ill., 1991) (to show an interrogation is unconstitutionally coercive, a plaintiff "must show misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience"). As such, Rhodes fails to set forth "enough facts to state a claim to relief [for coercive interrogation] that is plausible on its face," *Bell Atlantic Corp.*, 550 U.S. 544, and her coercive interrogation claim is dismissed without prejudice.

### *2. Rhodes' Statement Inculpating Bridewell*

Bridewell also attempts to state a claim under § 1983 for Defendants' coercive interrogation of Rhodes because that interrogation resulted in Rhodes making a statement that inculpated Bridewell. Bridewell's claim is barred by the Seventh Circuit's decision in *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir., 1994) (plaintiff has no constitutional claim where police obtained statement inculpating plaintiff from third-party witness via coercion). As the court explained in *Buckley*, "Buckley cannot complain that the prosecutors may have twisted Cruz's arm, any more than he can collect damages because they failed to read Cruz *Miranda* warnings or searched Cruz's house without a warrant." *Buckley*, 20 F.3d at 794. This is because "[r]ights personal to

their holders may not be enforced by third parties." *Id.* at 795. Accordingly, Bridewell's claim in Count II for coercive interrogation is dismissed with prejudice.

## C. Qualified Immunity

In their Motion, Defendants argue that they should be afforded qualified immunity from suit on all of Plaintiffs' claims because their actions as alleged in the Complaint were discretionary functions performed in the course of their official duties and did not violate any of Plaintiffs' clearly established constitutional rights. *See Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir., 1999). The availability of qualified immunity should be decided at the earliest opportunity in the litigation. *See Hunter v. Bryant*, 502 U.S. at 227. However, "immunity is an affirmative defense, and the federal standard of notice pleading does not require plaintiffs to anticipate defenses in their pleadings." *Fox v. Tomczak*, No. 04-7309, 2006 WL 1157466, at *5 (N.D.Ill., 2006) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir., 2000)). The existence of qualified immunity often depends on the facts of a given case and "plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Jacobs*, 215 F.3d at 765 n.3.

Here, the Complaint does not allege the elements of Defendants' qualified immunity defense. As explained above, the Complaint adequately alleges that Defendants unlawfully arrested

- 9 -

and seized Plaintiffs and, thereby, violated Plaintiffs' constitutional rights. While additional facts may come to light that entitle Defendants to qualified immunity, the Court cannot make that determination at this early stage of the litigation from the face of the Complaint. Accordingly, Defendants' qualified immunity argument fails.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss the Complaint is granted in part and denied in part. Defendants' Motion is denied with respect to Counts I, IV and Defendants' qualified immunity defense. Defendants' Motion is granted without prejudice with respect to Rhodes' claim in Count II. Defendants' Motion is granted with prejudice with respect to Bridewell's claim in Count II and Counts III and V.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 4/16/2009