IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARA BRIDEWELL, RANDY MANUEL, LISA RHODES, | Case No. 08 C 4947 |
| Plaintiff, | Judge Harry D. Leinenweber |
| v. | |
| | Magistrate Judge Denlow |
| CITY OF CHICAGO, and CHICAGO POLICE OFFICERS KEVIN EBERLE, and BRIAN FORBERG, | |
| Defendants. | |

**DEFENDANTS' RULE 56.1(a)(3) STATEMENT IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Detectives Kevin Eberle and Brian Forberg and the City of Chicago (herein "Defendants"), by their undersigned counsel, hereby present their Local 56.1(a)(3) Statement of Uncontested Facts in support of their Motion for Summary Judgment.[1]

**JURISDICTION AND VENUE**

1.  Jurisdiction and venue are proper and admitted under 42 U.S.C. § 1983 et. seq., 28 U.S.C. § 1331 and 28 U.S.C. § 1343. **First Amended Complaint ¶ 2, attached hereto as Exhibit 1**.

**PARTIES**

2.  At all relevant times, Sara Bridewell, Randy Manuel and Lisa Rhodes, were and are citizens of the United States and are within the jurisdiction of this Court. **Ex. 1 at ¶ 3.**

---

[1] Defendants submit this statement of uncontested facts for purposes of their Motion for Summary Judgment only. They do not admit the truth of these facts for any other purpose.

1

3. At all relevant times, Defendants Kevin Eberle and Brian Forberg were employed by the Chicago Police Department, and were acting under color of state law and as the employees, agents, or representatives of the City of Chicago Police Department. **Ex. 1 at ¶ 4.**

4. At all relevant times, the City of Chicago ("City") managed, maintained and operated the Chicago Police Department. **Ex. 1 at ¶ 5.**

## WALTER CHANDLER COMMITS A HIT-AND-RUN ON PLAINTIFFS' CAR

5. On the evening of September 3, 2006, Labor Day weekend, Walter Chandler (hereinafter "the victim") died after being shot in the head. **Eberle Dep. at 21:1-3-23, attached hereto as Exhibit 2; Humilier Dep. at 36:14-18, attached hereto as Exhibit 3; Autopsy Report at 4, attached hereto as Exhibit 4**.

6. Mr. Chandler was driving a black 2001 Ford Escape SUV, in reverse, on East 69th Street, when he struck a parked gold Nissan Altima belonging to Plaintiff Lisa Rhodes ("Rhodes"). Despite striking Rhodes's vehicle, Mr. Chandler continued driving down the street and into an alley. **Watkins Dep. 28:12-17, 32:21-24, attached hereto as Exhibit 5; Rhodes Dep. Part One October 20, 2010 at 43:9-16, attached hereto as Exhibit 6; Bridewell Dep. at 37:1-12, 40:23-24, 41:1-6, attached hereto as Exhibit 7; Manuel Dep. at 116:7-13, 24; 117:1, attached hereto as Exhibit 8**.

7. Rhodes and her sister, Plaintiff Sara Bridewell ("Bridewell"), witnessed the car accident. Plaintiff Randy Manuel ("Manuel") and witness Anthony Watkins ("Watkins") also saw the victim's SUV strike Rhodes's vehicle. **Ex. 5 at 28:12-17, 32:21-24; Ex. 6 at 43:9-16; Ex. 7 at 37:1-12, 40:23-24, 41:1-6; Ex. 8 at 116:7-13, 24; 117:1**.

8. Bridewell and Rhodes's mother, Lizzie[2], heard the accident, came outside of the house and told Bridewell and Rhodes to follow the victim in order to get his license plate number. **Ex. 7 at 42:12-24, 43:1, Ex. 6 at 43:13-16, Ex. 8 at 118:18-19; Lizzie Dep. at 41:20-24, 42:8-10, attached hereto as Exhibit 9**.

### PLAINTIFFS CHASE CHANDLER AND CORNER HIM IN AN ALLEY

9. Bridewell, Rhodes, Manuel and Watkins all got into Rhodes's car and followed the victim into the alley. Rhodes was driving. **Ex. 7 at 43:5-10, 19-23; Ex. 5 at 30:14-17, Ex. 6 at 43:13-24, 44:1-9, Ex. 8 at 121:20-24, 122:1-2, 5-11, 125:20-24, 126:1-3**.

10. According to Rhodes's deposition testimony, Watkins and Manuel got in the car to "kick [the victim's] ass." **Ex. 6 at 146:6-13**.

11. When Bridewell, Rhodes, Manuel and Watkins got to the alley, the victim was backing up. **Ex. 7 at 45:15-24, 46:1; Ex. 6 at 44:23-24**.

12. For a person unfamiliar with the area, the alleyway looked like a dead end. Rhodes pulled up behind the victim. **Ex. 2 at 30:5-7, 9-10, 12-20; Ex. 7 at 45:19-24, 46:1, 15-17, Ex. 6 at 45:3-6; Ex. 8 at 126:4-7**.

### PLAINTIFFS CONFRONT CHANDLER FROM ALL SIDES

13. Bridewell, Rhodes, Manuel and Watkins got out of the vehicle and approached the victim's driver's side window. Bridewell later approached the passenger side window. **Ex. 7 46:15-24, 48:17-22**.

14. According to Bridewell, Rhodes reached into the victim's vehicle, turned off the ignition and took his keys. **Ex. 7 at 49:8-24**.

---

[2] The full name of Bridewell and Rhodes's mother is Lizzie Rhodes. However, so as not confuse Lizzie Rhodes with Plaintiff Lisa Rhodes the mother is hereinafter referred to as "Lizzie."

3

15. Although Rhodes and Manuel never stated that they saw the victim with a gun, Bridewell claims she saw the victim with a gun and shouted words to the effect of, "He's got a gun." **Ex. 8 at 128:8-17; Ex. 6 at 52:15-18; Ex. 7 at 51:22-23, 54:23-24, 55:1**.

16. Bridewell, Rhodes, Manuel and Watkins then ran from the scene and Plaintiffs heard at least one gun shot. **Ex. 5 38:3-7; Ex. 6 at 47:7-24, 48:1-5, 57:2-9; Ex. 8 at 133:20-23, 134:13-16; Ex. 7 at 54:23-24, 55:1, 61:11-12**.

17. Rhodes testified that she heard two gunshots come from Chandler's car prior to hearing the horn. After being shot, the victim's head landed on the steering wheel, activating the horn. **Ex. 6 at 57:2-9; Ex. 2 at 41:23-24, 42:1-4; Moore Dep. at 89:14-18, 90:3-5, attached hereto as Exhibit 10**.

18. Police investigators received information from witnesses that multiple gunshots were heard coming from the scene. **Ex. 7 at 68:13-22; Ex. 6 at 57:2-9; Waight General Progress Report, attached hereto as Exhibit 11; Canvassing General Progress Report, attached hereto as Exhibit 12; Canvassing Worksheet, attached hereto as Exhibit 13; September 3, 2006 Supplementary Report, attached hereto as Exhibit 14**.

**VICTIM IS DEAD WITHIN SECONDS OF BEING CONFRONTED BY PLAINTIFFS**

19. Bridewell, Rhodes, Manual and Watkins were the last people to be with the victim before a bullet entered his head and killed him. **Ex. 5 at 77:4-8; Ex. 4 at 4**.

20. Bridewell, Rhodes, Manuel and Watkins deny seeing the victim get shot. **Ex. 6 at 51:16-21; Ex. 8 at 133:20-24, 134:1-12; Ex. 7 at 60:9-12; Ex. 5 at 38:9-10, 39:2-16**.

4

## FIRST RESPONDING OFFICERS ARRIVE AT THE SCENE

21. Officers Wesley Anderson and Tremayne Hall arrived to the scene and found Mr. Chandler slumped over the steering wheel of his car with his head on the horn and a gun in his car. Officers Anderson and Hall created a general offense case report documenting their actions on the scene. **General Offense Case Report, attached hereto as Exhibit 15**.

22. According to the General Offense Case Report, Rhodes told Officers Anderson and Hall that the victim hit her car, drove away, that she chased him into the alley with her car and after he stopped his car in the alley, the victim fired a gunshot at her. Other witnesses at the scene reported seeing multiple black males approach the car after the shot was fired and then someone fired multiple shots at the victim's car. **Ex. 15 at 2, Forberg Dep. at 51:22-24, 52:1-24, 53:1; 54:20-24, 55:1-5, attached hereto as Exhibit 16; Ex. 2 at 53:5-13, 15-18**.

23. Forberg and Eberle reviewed the general offense case report during the investigation. **Ex. 16 at 54:20-24, 55:1-5**.

24. Forensic Investigators William Moore and Marvin Otten investigated the scene and created a crime scene processing report documenting their actions and findings. **Crime Scene Processing Report, attached hereto as Exhibit 17**.

25. Moore and Otten found a fired bullet in front of the victim's SUV and a shell casing outside of the rear driver's side of the victim's SUV. Despite looking for them, Moore and Otten did not find any shell casings inside of the victim's car. **Ex. 2 at 50:14-24, 51:1-9; Ex. 10 at 39:21-24, 40:1-8, 41:9-11, 43:13-15; Ex. 17 at 4-5; September 15, 2006 Case Supplemental Report, attached hereto as Exhibit 18**.

26. Consistent with witness reports, Moore and Otten also observed multiple bullet holes in the hood of the victim's SUV. **Ex. 2. at 53:5-11; Ex. 10 at 42:14-20**.

### EBERLE AND FORBERG ARE ASSIGNED TO THE HOMICIDE INVESTIGATION

27.     Detectives Eberle and Forberg were assigned to the case at 6:43 p.m. on September 3, 2006, and proceeded to the scene. **Ex. 2 at 16:12-15, 17:19-24, 18:1, 19:23-24, 20:1-3, Ex. 18 at 8**.

28.     Prior to arriving on the scene, Eberle and Forberg heard, on their police radio, units responding to a "shots fired" call. **Ex. 16 at 19:13-24, 20:1-7**.

29.     When Eberle and Forberg got to the scene, they observed the victim's and Rhodes's vehicle back-to-back in the alley, both within the crime scene tape marking the perimeter. **Ex. 2 at 21:15-19, 22:1-19, 23:1-3**; Scene Photo, attached hereto as **Exhibit 2.1**.

30.     Forberg talked to a sergeant and officers at the scene and learned that the victim was involved in a traffic accident with Rhodes. **Ex. 16 at 40: 9-16; 45:14-24, 46:1-6; Ex. 2 at 31:6-17**.

31.     Forberg and Eberle looked into the victim's SUV and observed the victim slumped over in his car and observed what looked like three holes in the victim's head. It appeared that one hole was on the left side, another on the right side, and a third hole was on the top-back of the head. **Ex. 2 at 36:22-24, 37:1-7; Ex. 16 at 40:17-24, 41:1-6**.

32.     Forberg and Eberle were informed by Lieutenant Eric Carter that potential witnesses Everett Bonds and Shaun Waight had been located. **Ex. 16 at 46:7-14**.

33.     Forberg and Eberle interviewed witnesses Waight and Bonds at the scene. Bonds told the detectives that he, "sees the vehicles in traffic on 69th street, the Altima following the black Escape, sees them going to turn into the alley. And from his location he hears somebody yell he's got a gun. Moments later he hears a shot and then the horn go off. And then

subsequent to that he sees a number of individuals running on 69th Street eastbound." **Ex. 16 at 48:6-14**.

34. At the scene, Forberg and Eberle observed the same bullet holes in the front of the victim's SUV that were noted by the forensic investigators. Based on the location of the bullet holes and witness reports, they concluded that "some individuals, possibly, were standing in front of his vehicle and fired at his vehicle." **Ex. 2 at 53:5-11**.

35. Ferrar Rahman, a witness from the scene, told the police that Manuel "exchanged words" with the victim. **Ex. 2 at 198:18-24, 199:1-3; Rahman General Progress Report, attached hereto as Exhibit 19**.

### COOK COUNTY MEDICAL EXAMINER RULES DEATH A HOMICIDE
### NO EVIDENCE OF CLOSE RANGE FIRING

36. An autopsy was performed on Mr. Chandler on September 4, 2006 at 10:00 a.m., by Cook County Medical Examiner Dr. Michel Humilier. **Ex. 4 at 1**.

37. Dr. Humilier determined the cause of the death to be homicide and opined that there was "no evidence of close range firing." Dr. Humilier further opined that the bullet entered the victim's head on the right side and exited on the left, back side of his head. **Ex. 4 at 2**.

38. After the autopsy, Dr. Humilier informed the police of his findings. Eberle and Forberg learned of the findings during the investigation and detention of Bridewell, Rhodes, Manuel and Watkins. **Ex. 16 at 58:3-10; Ex. 2 at 167:19-24**.

### PLAINTIFFS LIE TO THE POLICE ABOUT THEIR INVOLVEMENT

39. Forberg and Eberle learned that a number of subjects, including Rhodes and Bridewell, had been detained at Area 2 for investigation. Forberg and Eberle did not personally detain anyone. **Ex. 16 at 53:14-17, 20-24, 54:1; 105:16-24, 106:1-24, 107:1-8; Ex. 2 at 84:4-10, 202:8-24, 203:1-4; Ex. 18 at 3, 10**.

40.     Detectives Pacelli, Baker, Sullivan and Moore-Grose were the first detectives to question Bridewell, Rhodes, Manuel and Watkins.  **Ex. 16 at 102:2-17; Ex. 2 at 92:6-20, 96:23-24, 97:1-4; Ex. 5 at 43:21-24; Baker General Progress Report, attached hereto as Exhibit 20; January 31, 2007 Supplemental Case Report at 6-8, attached hereto as Exhibit 21; Sullivan/Moore-Grose General Progress Report, attached hereto as Exhibit 22**.

41.     Before Forberg and Eberle began questioning Bridewell, Rhodes and Watkins they were told by other detectives that these individuals provided the following conflicting and inconsistent statements:

a.      Rhodes told beat officers that the victim shot at her, but did not tell this to Detectives Pacelli and Baker, **Ex. 2. 93:23-24, 94:1-12; 100:16-18**;

b.      Rhodes said she and Bridewell were on the driver's side of the victim's SUV, yet Bridewell said she was on the passenger side, **Ex. 2 at 94:13-17; 100:22-24, 101:1**;

c.      Rhodes left out the fact that Watkins and Manuel were in the car with her and Bridewell; however, Watkins told detectives that both he and Manuel were in car, **Ex. 2 at 94:18-23; 100:19-21; Ex. 6 at 112:22-24, 113:1, 12-15; Ex. 7 at 76:20-24, 77:1-11**.

d.      Both Rhodes and Bridewell each claimed that they were the first person to run from the scene, **Ex. 2 at 95:3-7**;

e.      Rhodes failed to mention removing the keys from the victim's SUV, **Ex. 2 95:8-16**;

f.      Rhodes told the beat officers that the victim fired a gunshot at her but later told detectives that the victim was incoherent and never moved, **Ex. 2 at 95:8-16**; and

g.      Manuel never admitted to being nearby the victim's vehicle and merely said that he was outside and heard a gunshot. **Ex. 2 at 95:19-24, 96:1**;

8

42. Watkins admitted at his deposition that he kept telling the detectives different stories. **Ex. 5 at 59:1-12**.

43. Rhodes told Eberle and Forberg that Bridewell hung out with a bad group. **Ex. 6 at 166:20-23**.

### BRIDEWELL, RHODES, MANUEL AND WATKINS ARE TESTED FOR GUNSHOT RESIDUE

44. Gunshot residue testing ("GSR") is a test to help determine whether an individual recently fired a weapon. GSR testing could detect trace gunshot residue remaining on the hand of an individual that fired a gun in the last five to eight hours. However, GSR testing will be ineffective if the individual washes their hands between firing the gun and being tested. **Berk Dep at 57:3-23, 74:14-24, 75:1-6, 16-24, 76:1, 80:8-14, attached hereto as Exhibit 23**.

45. Bridewell, Rhodes, Manuel and Watkins were all tested for gunshot residue within approximately four hours and 25 minutes of the shooting. While they each tested negative, only Bridewell washed her hands prior to the testing. **Ex. 23 at 49:12-21, 51:2-7; Ex. 10 at 34:21-23, 63:22-24, 64:1-10; Ex. 6 at 102:19-24, 103:1-3, Ex. 21 at 8; Ex. 17 at 5**.

### RHODES AND WATKINS INCULPATE BRIDEWELL

46. Bridewell, Rhodes and Watkins were given polygraph examinations by polygraph examiner Robert Bartik. No polygraph examination was administered for Manuel, since he invoked his right to counsel. **Ex. 7 at 78:19-24, 79:1-5; Ex. 6 at 108:4-9; Ex. 5 at 65:10-13; Ex. 2 at 201:16-20**.

47. During Rhodes's post-polygraph examination interview, Rhodes told polygraph examiner Bartik that her sister, Bridewell, killed Chandler. Rhodes described Bartik's demeanor as normal and non-threatening. **Ex. 6 at 191:16-19, 24, 192:1-4; 193:3-20**.

48. At some point, Watkins also identified Sara as the shooter and subsequently provided grand jury testimony to that effect. **Ex. 5 at 62:5-10**.

49. Watkins testified at his deposition that he never told the detectives that his identification of Bridewell as the shooter was untrue. Rather, he explained at his deposition, that his motive for inculpating Bridewell was "they made it seem like she said it was – she was telling them – she told – they said that she said that I did it, which wasn't true. So, in return, I – I, you know, I said she did it." **Ex. 5 62:5-10, 68:4-16**.

## BRIDEWELL CHARGED WITH MURDER

50. ASA Herrera charged Bridewell with first-degree murder on September 5, 2006. Prior to the charging, Assistant State's Attorneys William Bruce, Adam Weber and Catherine Malloy reviewed the homicide investigation relative to the death of Walter Chandler. **Murder Charge General Progress Report, attached hereto as Exhibit 24; Popielewski Dep. 49:3-5, 17-19; 50:1-3, attached hereto as Exhibit 25**.

51. This review included the viewing and analysis of the recorded interrogation videos of Bridewell, Rhodes, Watkins and Manuel. After this viewing and analysis, ASA's Bruce, Weber and Malloy created video statement logs in order to note their impressions of the interviews and provide a summary of what is reflected on the videotapes for other state's attorneys who have not watched the video. **Ex. 2. at 108:11-12,15-16, Ex. 25 at 17:2-11, 47:19-24, 48:1-4, 49:3-5, 13-19; 50:1-3, 15-18, 51:19-24, 52:1-4, 10-15**.

52. Rhodes alleges that she was detained in police custody for approximately 40 hours. Manuel alleges that he was detained for approximately 27 hours. Watkins alleges he was detained for approximately 36 hours. **Ex. 1 ¶¶ 18-20**.

53. Bridewell alleges she was detained for approximately sixty-three hours before being brought before a judge. **Ex. 1 ¶ 17**

## BRIDEWELL'S SIMULTANEOUS PENDING COCAINE AND GUN CHARGE

54. The murder case against Bridewell was dismissed via *nolle prosequi* on July 22, 2009. **Certified Statement of Disposition 06-CR-22756, attached hereto as Exhibit 26**.

55. During that same court proceeding, Bridewell pled guilty to pending gun and drugs charges and was given time served. **Certified Statement of Disposition 06-CR-16629, attached hereto as Exhibit 27**.

56. The murder charges were dropped as a part of an agreement for the guilty plea on the gun and drugs case. **July 22, 2009 Criminal Court Transcript, attached hereto as Exhibit 28**.

57. In accepting the guilty plea, the court explained to Bridewell that she had the right to appeal her plea of guilt and further explained the appeal process. Bridewell indicated that she understood the court's explanation. **Ex. 28**.

58. Bridewell was sentenced to four years incarceration on the gun and drugs charges, and received credit for 1,057 days served. **Ex. 27, 28**.

59. Bridewell was incarcerated for almost three years on the murder charge. **Ex. 7 at 83:23-23, 84: 1-2**.

60. The gun and drugs charges arose from a police investigation on July 7, 2006, whereby Lizzie Rhodes gave the police consent to search her home. **Ex. 7 at 29:22-24, 30:1-10; Ex. 9 at 33:14-22, 34:18-24, 35:1-5; July 7 2006 Police Report, attached hereto as Exhibit 29**.

61. During the July 2006 search of the home, officers recovered rock cocaine and a sawed off shotgun under Bridewell's bed. **Ex. 29**.

62. Bridewell was arrested and subsequently released on bond in connection with the drugs and gun charges. **Ex. 27**.

63. While on bond, Bridewell was arrested for the murder of Walter Chandler on September 3, 2006. **Ex. 7 at 127:21-24, 128:1-7**.

64. After she was arrested on September 3, 2006 for the murder of Walter Chandler, Bridewell's bond was revoked and she was detained in Cook County Jail. **Ex. 26; Ex. 7 at 128:16-23**.

65. The initial Complaint in this case was filed on August 29, 2008. **Compl. at 1, attached hereto as Exhibit 30**.

66. On October 6, 2010, the court in *Dunn v. City of Chicago*, No. 04 C 6804 (N.D. Ill.) issued a final judgment encompassing the following three classes of individuals:

> I. All persons held in a Chicago Police Department ("CPD") interrogation or interview room for more than 16 hours in a 24-hour period at any time from October 21, 2002 to May 14, 2010. Individuals in Class I were eligible to receive payment of up to $2,000.
>
> II. All persons detained in a CPD lock up or detective facility from 10:00 p.m. (or earlier) on a given day and not released until 6:00 a.m. (or later) of the following day, at any time from October 21, 2002 to May 14, 2010. Individuals in Class II were eligible to receive payment of up to $90.
>
> III. All persons arrested by CPD on suspicion of a felony without an arrest warrant and who were detained by CPD and were not released and did not receive a judicial probable cause hearing within 48 hours of arrest, at any time from March 15, 1999 to February 10, 2008." Individuals in Class III were eligible to receive payment of up to $3,000.

*Dunn v. City of Chicago*, **No. 04 C 6804 (N.D. Ill. Oct. 6, 2010), Dkt. No. 356, attached hereto as Exhibit 31**.

67. Bridewell did not opt out of the class action settlement in *Dunn v. City of Chicago*, No. 04 C 6804 (N.D. Ill.) and the time to do so has passed. **Ex. 31 at ¶17 and pp. 11-12**.

68. In 2008, Dr. Humilier amended his report by striking the language "no evidence of close range firing" and replacing it with "soot deposition." **Ex. 4**. Humilier did not amend his finding of homicide.

69. Plaintiff's retained expert, Dr. Shaku Teas, opined that the victim's death was a suicide. **Report of Dr. Shaku Teas, attached hereto as Exhibit 32**.

Respectfully submitted,

/s/ Monifa K. Gray
Monifa K. Gray

Andrew M. Hale
Avi Kamionski
Shneur Nathan
Monifa K. Gray
Andrew M. Hale & Associates
53 West Jackson, Suite 1800
Chicago, IL 60604
312-341-9646
P69072