IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SARA BRIDEWELL, RANDY MANUEL, LISA RHODES, | ) ) ) | Case No. 08 C 4947 |
| Plaintiffs, | ) ) | Judge Harry D. Leinenweber |
| v. | ) ) ) | Magistrate Judge Denlow |
| CITY OF CHICAGO, and CHICAGO POLICE OFFICERS KEVIN EBERLE, and BRIAN FORBERG, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Kevin Eberle, Brian Forberg and the City of Chicago, by their undersigned attorneys, hereby submit this memorandum of law in support of their motion for summary judgment and state as follows:

**INTRODUCTION[1]**

On the evening of September 3, 2006, Labor Day weekend, Walter Chandler was shot and killed after he committed a hit-and-run on plaintiff Lisa Rhodes's car. Defs.' 56.1 at ¶¶ 5.

**The Confrontation**

Just before being shot in the head, Chandler crashed his vehicle into Rhodes's car. Defs.' 56.1 at ¶ 6. Instead of stopping, he drove off and, shortly thereafter, was trapped by Rhodes, Plaintiff Sara Bridewell, Plaintiff Randy Manuel and Anthony Watkins in an alley. Defs.' 56.1 at ¶ 12. In the alley, Plaintiffs surrounded Chandler's vehicle and demanded that he pay for the damage to Rhodes's car. Unhappy with Chandler's response, Rhodes reached into the passenger

---

[1] The statement of facts is set forth in Defendants' Local Rule 56.1(a)(3) Statement In Support of Their Motion for Summary Judgment, filed separately.

[2] This Court has already ruled that Bridewell cannot proceed with a federal malicious prosecution claim.

1

window of Chandler's vehicle and grabbed his car keys, while Bridewell confronted Chandler from the passenger side. Defs.' 56.1 at ¶¶ 13-14.

### Chandler Is Shot In The Head

Seconds later, Chandler was shot dead in the head and plaintiffs were seen running from the scene. Defs.' 56.1 at ¶ 16. Rhodes's car was found directly behind Chandler's vehicle and it is undisputed that plaintiffs were the last people with Chandler seconds before he was shot, but they deny any responsibility for his death. Defs.' 56.1 at ¶ 19. To be fair, the parties dispute whether Bridewell shot Chandler or whether Chandler shot himself. However, that dispute is irrelevant to what the police knew at the time Bridewell, Rhodes and Manuel were detained in this homicide investigation.

### The Homicide Investigation

On scene, the police observed multiple bullet holes in the hood of Chandler's vehicle and multiple holes in Chandler's head. Defs.' 56.1 at ¶¶ 26, 31, & 34. Witnesses reported people shooting at Chandler's vehicle. Defs.' 56.1 at ¶ 22. A shell casing was discovered behind Chandler's vehicle and a fired bullet was recovered several feet in front of the vehicle. *Id*. A gun was recovered in Chandler's vehicle, but there were no shell casings found in the vehicle, indicating that all the shooting occurred outside the vehicle. Defs.' 56.1 at ¶ 25. The police were clearly dealing with a homicide investigation.

The next morning, Cook County Medical Examiner Dr. Michel Humilier conducted an autopsy and ruled the case a homicide. Defs.' 56.1 at ¶ 37. Dr. Humilier opined that there was "no evidence of close range firing," eliminating any suggestion that Chandler could have shot himself. *Id*.

**Plaintiffs Detained For Questioning**

On September 3, 2006, plaintiffs, along with other witnesses, were transported to Area 2 for questioning. Defs.' 56.1 at ¶ 39. Rhodes, Manuel and Watkins were questioned and released without charging, less than forty-eight hours after they were detained. Defs.' 56.1 at ¶ 52. However, Rhodes and Watkins did make statements to the police implicating Bridewell in Chandler's death. Defs.' 56.1 at ¶¶ 46-49. Thus, Bridewell was charged with murder. Defs.' 56.1 at ¶ 50. Today, Rhodes and Watkins contend those statements were lies and that they were pressured by the police to implicate Bridewell. Any such contention is irrelevant for purposes of this motion.

**Bridewell Pleads Guilty In A Separate Gun Case To Avoid A Murder Trial**

Prior to her arrest for murder, on July 8, 2006, Bridewell was arrested for possession of drugs and a gun. Defs.' 56.1 at ¶¶ 60-61. To avoid facing trial on the murder case, Bridewell entered a guilty plea on her pending drug and gun case. Defs.' 56.1 at ¶ 56. Bridewell's murder charges were then dismissed and she was credited the time served on the murder case in exchange for her guilty plea on the drug and gun case. Defs.' 56.1 at ¶ 58.

**Plaintiffs' Civil Claims**

Plaintiffs bring the following claims against Defendants Kevin Eberle and Brian Forberg: In count I, Bridewell, Rhodes and Manuel claim they were unlawfully detained in the Walter Chandler murder investigation in violation of the Fourth Amendment. In counts II and III, Bridewell alleges that she was maliciously prosecuted for Chandler's murder and that she was subjected to severe emotional distress. Based on the undisputed facts, Defendants had ample probable cause to detain Bridewell, Rhodes and Manuel in the murder investigation. Bridewell's guilty plea deal with prosecutors on her drug and gun charge dooms her claims as well.

**STANDARD OF REVIEW**

Fed. R. Civ. P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." While "all inferences are to be taken against the moving party and in favor of the opposing party," *Adikes v. S.H. Kress & Co.,* 398 U.S. 144 (1980), only reasonable inferences and not all conceivable inferences will be drawn. *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 683 (7th Cir. 1999). Once a motion for summary judgment has been made and properly supported, the non-moving party has the burden of setting forth specific facts showing the existence of a genuine issue of material fact for trial. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322-23 (1986). The party that bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324. An issue of material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2002). The existence of a factual dispute will not bar summary judgment unless the disputed fact is outcome determinative under governing law. *Contreras v. City of Chicago,* 119 F.3d 1286, 1291-92 (7th Cir. 1997).

**ARGUMENT**

I.     PROBABLE CAUSE EXISTED TO DETAIN AND QUESTION PLAINTIFFS IN THE DEATH INVESTIGATION OF WALTER CHANDLER, THEREFORE PLAINTIFFS' FALSE ARREST CLAIM IN COUNT I FAILS AS A MATTER OF LAW

    A.     The Scope Of Plaintiffs' False Arrest Claim

4

Count I of plaintiffs' First Amended Complaint alleges that Bridewell, Rhodes and Manuel were unlawfully detained in violation of the Fourth Amendment. Fourth Amendment violations cover the time from which a person is detained up to the time that he or she is released or brought before a judge and charges are formally brought. See *Wallace v. Kato*, 549 U.S. 384, 389 (2007). To avoid a Fourth Amendment violation, a police officer must have probable cause when he detains an individual. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Once an individual is detained, pursuant to probable cause, the law presumes that a detention in a police investigation that lasts less than forty-eight hours is reasonable. *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

A police officer has probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). Because probable cause is an objective standard, it is not the subjective state of mind of the arresting officer that is at issue. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Probable cause is more than a bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than not. *Hughes v. Meyer*, 880 F.2d 967, 969-70 (7th Cir. 1989), citing *Brinegar v. U.S.*, 338 U.S. 160, 175-76 (1949).

**B.      The Objective Facts At The Crime Scene Gave The Police Probable Cause To Detain Plaintiffs**

For purposes of evaluating whether there was probable cause to detain the Plaintiffs, the court "must consider the facts as they would have reasonably appeared to [Eberle and Forberg] seeing what [they] saw, hearing what [they] heard." *Jenkins v. Spaargaren*, 2011 WL 1356757,

5

\*3 (N.D.Ill. April 7, 2011) (Leinenweber, J), *citing Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010). The police knew the following information prior to Plaintiffs' detention:

### Evidence At The Scene Indicated A Homicide

This investigation started when the police received a call of shots fired. Defs.' 56.1 at ¶ 28. Upon arrival at the scene, the police observed the dead victim slumped over the steering wheel in his vehicle. Defs.' 56.1 at ¶ 21. Multiple bullet holes were present in the hood of the vehicle. Defs.' 56.1 at ¶ 26. Several witness reported to the police that they heard multiple gunshots and saw some individuals shooting at the car. Defs.' 56.1 at ¶ 22. Rhodes, herself, admits that she heard two gunshots before hearing the horn blaring from the Chandler's vehicle, the point at which Chandler collapsed. Defs.' 56.1 at ¶ 17. The victim also appeared to have three bullet holes in his head, suggesting he was shot multiple times. Defs.' 56.1 at ¶ 31. Additionally, the keys to the victim's vehicle were missing, suggesting that someone entered the vehicle and removed the keys. Defs.' 56.1 at ¶ 14. This undisputed evidence, considered collectively, provided ample grounds for the police to believe they were dealing with a homicide investigation. The next question for the police to address was: who was involved?

### Plaintiffs Made Themselves Suspects In The Homicide Investigation - Plaintiffs Chased Chandler And Confronted Him Moments Before He Died

It is undisputed that plaintiffs chased Chandler after he committed a hit-and-run on Rhodes's car. Defs.' 56.1 at ¶ 6. When the police arrived on the scene, Rhodes's car was parked directly behind the victim's vehicle. Defs.' 56.1 at ¶ 29. This fact provided the officers with reason to suspect that Rhodes and her associates may have been involved in the shooting.

Also, plaintiffs were the last persons to see the victim alive. *See People v. Vida*, 323 Ill.App.3d 554, 561 (1st Dist. 2001)(reversed on other grounds); *People v. Vida*, 202 Ill.2d 696,

783 N.E.2d 31, (Ill. 2003)(proximity of defendant to crime scene and whether defendant was among the last to see the victim alive were relevant factors in the probable cause analysis.); *People v. Harvey*, 209 Ill.App.3d 733, 741 (1st Dist. 1991)(being the last person to see the victim alive was a relevant fact to the probable cause analysis).

Moreover, witnesses reported to police that people ran from the scene. Defs.' 56.1 at ¶¶ 18, 22, & 33. Plaintiffs, themselves, concede they ran from the scene. Defs.' 56.1 at ¶ 16. Such flight is a factor upon which a reasonable officer could deduce probable cause. *See U.S. v. Ellis,* 499 F.3d 686, 691 (7th Cir. 2007)(flight can be strong evidence of guilt). In addition, Rhodes's statements to Officers Wesley Anderson and Tremayne Hall suggested there was a shooting altercation between Rhodes and the victim. Defs.' 56.1 at ¶ 22. According to Anderson and Hall's General Offense Case Report, reviewed and relied upon by Eberle and Forberg, Rhodes claimed that after the victim stopped his car in the alley he fired a shot at her. Defs.' 56.1 at ¶¶ 22-23.

### The Location of A Shell Casing and Bullet

Finally, another important piece of evidence establishing probable cause to detain plaintiffs was the location of a fired shell casing recovered at the scene. It is undisputed that the police recovered a shell casing and a fired bullet. Defs.' 56.1 at ¶ 25. The shell casing was recovered behind the victim's vehicle, close to Rhodes's vehicle. Defs.' 56.1 at ¶ 25. The fired bullet was recovered in front of the victim's vehicle. *Id*. Although there was a gun recovered in the victim's vehicle, there were no shell casings found inside in the victim's vehicle to indicate that the victim had fired his gun from inside the vehicle. *Id.* Consequently, it was reasonable for officers at the scene to believe that the gunshot that killed the victim came from a gun outside the victim's car. The proximity of the shell casing to Rhodes's vehicle provided further

corroboration of the officers' reasonable belief that someone from Rhodes's vehicle (which was parked directly behind the victim's car) confronted the victim and fired a gun from the location of the recovered shell casing (behind the victim's vehicle), supporting a theory that the victim was murdered. *See U.S. v. Rice* --- F.3d ----, 2012 WL 718500 * 4 (7th Cir. Mar. 7, 2012)(location of spent shell casings provided permissible inference to be drawn in determining the circumstances of a shooting).

Taking all these facts together, there was ample probable cause to detain Rhodes, Bridewell and Manuel in connection with the Chandler murder investigation and to bring them to the police station for further questioning. The remainder of Rhodes and Manuel's detention, which was less than forty-eight hours, is presumed reasonable under the law. *McLaughlin*, 500 U.S. at 56. Plaintiffs have the burden to rebut this presumption. *Id.* at 57. As explained below, Plaintiffs cannot meet that burden because there is additional evidence that demonstrates there was abundant probable cause to further detain Plaintiffs.

**C. Additional Evidence Learned During The Investigation Enhanced The Probable Cause To Detain Plaintiffs**

**The Medical Examiner Rules Chandler's Death A Homicide**

After the autopsy was conducted on September 4, 2006 at 10:00 a.m, and during the investigation, Eberle and Forberg learned that Cook County Medical Examiner Dr. Michel Humilier ruled that the Chandler's death was a homicide. Defs.' 56.1 at ¶¶ 36-38. Dr. Humilier also opined that there was no evidence of close range firing, indicating that the gun that shot Chandler was held at a distance from his head. Defs.' 56.1 at ¶ 37. Dr. Humilier also determined that the bullet path through Chandler's head traveled from right to left. *Id.* In other words, the gun must have been fired from the right side – or the passenger side – of Chandler. Bridewell admitted that she was on the passenger side of Chandler's vehicle moments before he died.

Defs.' 56.1 at ¶ 13. Accordingly, the medical examiner's opinion gave Eberle and Forberg further probable cause to continue plaintiffs' detention in the investigation. *See Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648, 658-659 (1st Dist. 2006)("[D]etectives were not required to second guess the medical examiner's expertise and analyze whether her opinion was sound" in relying on her opinion for purposes of their criminal investigation).

In 2008, two years after Chandler died, Dr. Humiler amended his report to opine that there was, in fact, evidence of close range firing, indicating that the gun was placed up against Chandler's head at the point he was shot. Defs.' 56.1 at ¶ 68. Dr. Humiler, nevertheless, still maintains that the shooting was a homicide. *Id.* Plaintiffs' retained expert, Dr. Shaku Teas, has also opined that the gun that killed Chandler was placed up against his head. Unlike Dr. Humiler, Dr. Teas believes Chandler shot himself as a suicide. The court need not resolve this disputed factual question because the relevant issue here is what information the police knew during their investigation in 2006. In 2006, Dr. Humiler reported to the police that Chandler's death was a homicide and that there was no evidence of close range firing. Defs.' 56.1 at ¶¶ 36-38. It is well settled that evidence not known to the officers at the time cannot factor into their probable cause analysis. *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010).

### Bridewell and Rhodes Attempt to Mislead The Police

During their interrogations, Bridewell and Rhodes denied that Manuel and Watkins were present when they chased Chandler and confronted him in the alley. Defs.' 56.1 at ¶ 41(c). Bridewell and Rhodes both testified that they intentionally lied about Manuel and Watkins being in the car. *Id.* Rhodes admits that she never disclosed Bridewell was in the car until she was specifically asked by Forberg and Eberle. *Id.* Watkins testified that he kept telling the detectives "different stories" during the investigation. Defs.' 56.1 at ¶ 42. "Lying in response to police

9

questioning is a strong indicator of guilt, particularly when it is lying about an incriminating fact." *Booker v. Ward.* 905 F.Supp. 483, 491 (N.D. Ill. 1995)(Hart, J), aff'd by *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). See also *Fox v. Hayes*, 600 F.3d 819, 836 (7th Cir. 2010)("Obviously false and inconsistent explanations can lend support to a probable cause finding.").

Based on all the undisputed evidence set forth above that the defendant officers were aware of and relied upon, there was sufficient probable cause to detain plaintiffs in this death investigation. Therefore, plaintiffs' Fourth Amendment claim fails as a matter of law.

**D.    Bridewell's Plea Of Guilty Negates Her Fourth Amendment Claim**

Defendants concede that a guilty plea does not preclude a false arrest claim in every case. However, it does here. As discussed below, Bridewell pled guilty on July 22, 2009 to a separate gun and drug charge. Bridewell was sentenced to four years pursuant to that plea. Defs.' 56.1 at ¶ 58. Bridewell received credit for 1057 days she had already served as of July 22, 2009. *Id.* Bridewell was arrested on September 3, 2006 and as of July 22, 2009, she had been in custody (Chicago Police and Cook County Department of Corrections) for a total of 1053 days. *Id.* As such, Bridewell should be foreclosed from claiming she was detained in violation of the Fourth Amendment for the period of time she was in Chicago Police custody.

Bridewell's guilty plea and her acceptance of a four-year sentence demonstrate that her "deprived liberty interest" was non-existent. In other words, Bridewell should not be allowed to seek damages for alleged deprived liberty interests when her plea agreement would have placed her in custody regardless of the murder charge for the amount of time she spent. For example, a plaintiff does not have a claim for false arrest "if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests." *Parker*

10

*v. City of New York,* 2008 WL 110904, at *9 (S.D.N.Y. Jan.7, 2008). Simply put, it is unfair for Bridewell to benefit from her guilty plea and be credited for time served on the one hand and then be able to seek compensation for that time in custody on the other hand. This is yet another reason why Bridewell's Fourth Amendment claim fails as a matter of law.

**II.     ANY DURATION OF CONFINEMENT CLAIM IS BARRED BY RES JUDICATA**

To the extent Bridewell is asserting a duration of confinement claim under *County of Riverside v. McLaughlin*, any such claim is barred by the class action settlement in *Dunn v. City of Chicago*, No. 04 C 6804 (N.D. Ill.). Res judicata prevents parties "from relitigating issues that have already been decided." *Fontana v. Elrod*, 826 F.2d 729, 730 n.2 (7th Cir. 1987) (quoting *United States Sec'y of Labor v. Cerro Copper Prod. Co.*, 795 F.2d 25, 26 (7th Cir. 1986)). "Res judicata applies when there is (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Fontana*, 826 F.2d at 730 n.2 (quoting *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 645 (7th Cir. 1986) (internal quotation marks omitted). Class action settlements may bar relitigation of the issues resolved in those actions as to named plaintiffs as well as to all class members, whether or not the individual class member actually received notice of the settlement. *See Fontana*, 826 F.2d at 731-32; *Purnell v. Sheriff of Cook County*, No. 07 C 7070, 2009 WL 1210651, at *3 (N.D. Ill. 2009).

In October 2010, the court entered final judgment in *Dunn*, a class action arising from the detention of individuals by the Chicago Police Department. Defs.' 56.1 at ¶ 66. The class action encompassed the following three classes of individuals:

1) All persons held in a Chicago Police Department ("CPD") interrogation or interview room for more than 16 hours in a 24-hour period at any time from October 21, 2002 to May 14, 2010. Individuals in Class I were eligible to receive payment of up to $2,000.

2) All persons detained in a CPD lock up or detective facility from 10:00 p.m. (or earlier) on a given day and not released until 6:00 a.m. (or later) of the following day, at any time from October 21, 2002 to May 14, 2010. Individuals in Class II were eligible to receive payment of up to $90.

3) All persons arrested by CPD on suspicion of a felony without an arrest warrant and who were detained by CPD and were not released and did not receive a judicial probable cause hearing within 48 hours of arrest, at any time from March 15, 1999 to February 10, 2008." Individuals in Class III were eligible to receive payment of up to $3,000.

*Id.*; *see also Dunn v. City of Chicago,* No. 04 C 6804 (N.D. Ill.), Overview of the Settlement, https://dunnsettlement.com/overview.htm (last visited Apr. 5, 2012). The deadline to opt out of the settlement was in September of 2010, and the deadline to submit a claim under the settlement was October 25, 2010. *See Dunn v. City of Chicago,* No. 04 C 6804 (N.D. Ill.).

The duration of detention claim arguably asserted by Bridewell falls within Class 3 of the *Dunn* class action settlement. Defs.' 56.1 at ¶ 66. Under the *Dunn* settlement, even if Bridewell was held for sixty-three hours as she alleges, she was eligible to receive up to $3,000 if she timely filed a claim in the *Dunn* litigation. *Id.* She had until September 9, 2010, to opt-out of the *Dunn* settlement but it does not appear that she has done so. Defs.' 56.1 at ¶ 67. Consequently, Bridewell's duration of detention claim is barred by the *Dunn* class action settlement.

### III. BRIDEWELL'S GUILTY PLEA DOOMS HER MALICIOUS PROSECUTION CLAIM

Bridewell's state law malicious prosecution claim[2] in count V fails as a matter of law. In order to prevail on a malicious prosecution claim, Bridewell must prove that: (1) the detectives commenced or continued the criminal proceeding against her; (2) the absence of probable cause for the proceeding; (3) the proceeding terminated in her favor; (4) malice; and (5) damages. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996); *Logan v. Caterpillar, Inc.*, 246 F.3d 912,

---

[2] This Court has already ruled that Bridewell cannot proceed with a federal malicious prosecution claim. July 22, 2010 Memorandum Opinion and Order, Dkt No. 241.

12

921-22 (7th Cir. 2001). The absence of even one of these elements precludes a plaintiff from prevailing on such a claim. *Id.*

  A.  **Bridewell's Criminal Case Was Not Terminated In Her Favor**

The most glaring failure in Bridewell's malicious prosecution claim is the fact that the criminal proceedings against her were not terminated in her favor. In *Joiner v. Benton Community Bank,* 411 N.E.2d 229, 232 (Ill. 1980), the court held that "the settled law bars a malicious prosecution action predicated upon criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." Similarly, in *Jones v. Village of Villa Park,* 815 F.Supp. 249, 253 (N.D. Ill., 1993), where, pursuant to a plea agreement, the plaintiff pled guilty to a minor offense and had the remaining charges against him dismissed by *nolle prosequi,* the court held that it could not conclude that the plaintiff's prior criminal proceeding terminated in a manner indicative of his innocence. Moreover, where a "dismissal was merely a formal means of securing a negotiated settlement, it cannot serve as the basis for a malicious prosecution action." *Cult Awareness Network v. Church of Scientology Intern,* 685 N.E.2d 1347, 1353 (Ill. 1997).

While the majority of jurisdictions recognize a prosecutor's abandonment of proceedings via a *nolle prosequi* as a favorable termination in favor of the accused, this is not true if the prosecutor abandons the proceeding for reasons not indicative of the accused's innocence. *Aguirre v. City Chicago,* 382 Ill. App.3d 89, 96 (1st Dist. 2008). As the Illinois Supreme Court articulated:

> The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new

13

> criminal proceedings, or impracticability of bringing the accused to trial.

*Swick v. Liautaud*, 169 Ill.2d at 513 (1996).

In this case, Bridewell's murder charges were dropped as a part of an agreement for the plea of guilty on a gun charge in an unrelated case. *See* Defs.' 56.1 at ¶ 56. By way of background, on July 7, 2006, Chicago Police officers were investigating the possibility of drug sales occurring at the address of 1307 E. 69th street, Bridewell's home. Defs.' 56.1 at ¶ 60. The officers entered the home and Bridewell's mother signed a consent to search the home. *Id.* In the course of the search, the officers recovered three bags of rock cocaine (58.6 grams) and a sawed off shotgun under Bridewell's bed. Defs.' 56.1 at ¶ 61. Bridewell was arrested and released on bail. Defs.' 56.1 at ¶ 62. On September 3, 2006, while on bond, Bridewell was arrested for the murder of Chandler. Defs.' 56.1 at ¶ 63. After her arrest, Bridewell's bond was revoked and Bridewell was placed in Cook County Jail. Defs.' 56.1 at ¶ 64. On July 22, 2009, Bridewell pleaded guilty to the gun and drug charge. Defs.' 56.1 at ¶ 55. As a part of the agreement to plead guilty, the murder charge was dropped. Defs.' 56.1 at ¶¶ 55-56. After explaining the implications of a guilty plea, such as waiving the right to a trial, the Court stated:

> THE COURT: Now, aside from what the prosecuting attorney agreed to do here for you, part of this agreement I assume includes nolleing the murder charge?
>
> MS. POPIELEWSKI (prosecutor): Nolle the murder charge.

Defs.' 56.1 at ¶ 56, Ex. 28, p. 10:14-18.

In further admonishing Bridewell, the court explained that Bridewell had a right to appeal her plea of guilty. The court explained the process of appealing and that if the court granted her motion to vacate her plea of guilty, "[t]he case would be reinstated, including the original Class X drug charge, the murder charge will be reinstated, and everything will be set down for trial as

14

if today never happened." Defs.' 56.1 at ¶ 58, Ex. 28, p. 16:1-8. In response, Bridewell said "yes," she understood. *Id.* As such, Bridewell herself acknowledged that her guilty plea was part of a deal to resolve all of her pending cases.

Evidence of this agreement is reinforced by the punishment Bridewell actually received. The Court explained:

> You're sentenced to four years in Illinois Department of Corrections on each count. The counts will run concurrent. The sentences will run concurrent. You'll be given credit for 1,057 days time you've already served [on the murder charge]

Defs.' 56.1 at ¶ 58, Ex. 28, p. 15:6-10.

As such, Bridewell's guilty plea on the drug and gun charges was clearly part of a negotiated deal that also resolved the murder charges at issue here. Bridewell cannot now claim that she was maliciously prosecuted on these very same charges. *Joiner,* 411 N.E.2d at 232; *see also Gray v. Burke,* 466 F.Supp.2d 991, 1000 (N.D. Ill. 2006)(Moran, J) (summarily dismissing a malicious prosecution claim where "[b]y all appearances, the abandonment of the [one of the counts] resulted in an agreement to plead guilty to [another count]"). Therefore, Bridewell's malicious prosecution claim fails as a matter of law.

       **B.**     **Bridewell Cannot Satisfy The Damages Element Either**

As a part of Bridewell's guilty plea, she was sentenced to four years on both counts. Defs.' 56.1 at ¶ 58. At the time of her plea, Bridewell had already served about four years awaiting trial on the murder charge. Defs.' 56.1 at ¶ 59. A plaintiff has the burden of establishing damages as one of the elements in order to succeed on a malicious prosecution claim. *Turner v. City of Chicago,* 91 Ill.App.3d 931 (1980). As with all other elements, "the failure to establish even one element will preclude recovery for malicious prosecution." *Fabiano,* 784 N.E.2d at 265.

Here, Bridewell cannot establish any damages she suffered by being charged with murder. As explained above, Bridewell pleaded guilty to the gun and cocaine charges and was sentenced to four concurrent years in prison for each count. Based on her plea agreement, the Court gave Bridewell credit for 1,057 days time she already had served on the murder charge. Defs.' 56.1 at ¶ 58. As such, Bridewell cannot establish any damages that she suffered that were separate and distinct from the time she had already spent in prison for the crime on which she plead guilty. To the extent that Bridewell claims her damages are emotional (presumably the thought of a murder prosecution versus a gun charge looming over her), such damages are not actionable for a malicious prosecution claim. *Kies v. City of Aurora,* 156 F.Supp.2d 970 (N.D. Ill. 2001)(granting summary judgment against plaintiff on a malicious prosecution claim because "plaintiff suffered only emotional damages and attorney's fees, and these damage did not constitute a deprivation of property of constitutional magnitude."). *See also Penn v. Chicago State University,* 162 F.Supp.2d 968, 977 (N.D. Ill. 2001) (malicious prosecution claim failed, in part, where plaintiff was unable to establish "incarceration or some other palpable injury"). Therefore, given that Bridewell's jail time was attributed to her plea of guilt on the cocaine and gun charge, Bridewell cannot establish separate and distinct damages for her murder prosecution.

## IV. BRIDEWELL'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) CLAIM FAILS AS A MATTER OF LAW

### A. Bridewell's IIED Claim is Time-Barred

Bridewell's has alleged a state law claim of intentional infliction of emotional distress. Under the Illinois Tort Immunity Act, actions against City employees are limited to a one-year statute of limitations. 745 ILCS 10/8-101 (2004). A claim for intentional infliction of emotional distress against a police officer accrues at the "last confirmed interaction" between the officer

16

and the plaintiff. *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006)(interpreting Illinois law). *See also Aleman v. Vill. of Hanover Park*, 748 F.Supp.2d 869, 891-892 (N.D. Ill. 2010).

The last alleged interaction between Bridewell and Eberle and Forberg was the day she was charged, September 5, 2006. Defs.' 56.1 at ¶ 50. However, the Complaint was not filed until August 29, 2008, well over the one-year statute of limitations. Defs.' 56.1 at ¶ 65. Therefore, Bridewell's IIED claim is time-barred.

### B. Bridewell's IIED Claim Should be Dismissed As There is No Underlying Wrongful Act

Alternatively, if the Court concludes that Bridewell's IIED claim is not technically barred, her claim fails if defendants prevail on plaintiff's malicious prosecution claim. See *Cooney v. Casady*, 746 F.Supp.2d 973 (N.D. Ill. Oct. 28, 2010)(plaintiff cannot maintain IIED claim without underlying wrongful conduct).

### V. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As police officers, defendants Eberle and Forberg are entitled to qualified immunity regarding their discretionary decisions and are therefore "shielded from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(internal citations omitted). When performing the qualified immunity analysis, a court may decide in any order or combination whether the officer: (1) violated a constitutional right; and (2) whether that right was clearly established at the time. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808 (2009). Qualified immunity protection applies to reasonable mistakes based on mistakes of law, mistakes of fact and mixed questions of law and fact. *Id.* at 231.

In a false arrest case, a police officer is "entitled to qualified immunity [] when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause

existed." *Id.* (citations omitted). Therefore, as long as Eberle and Forberg reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest Bridewell, Rhodes and Manuel, then Eberle and Forberg are entitled to qualified immunity. *Id.* This standard is often dubbed "arguable probable cause." *Id.* (citations omitted). The Seventh Circuit has recently articulated that "arguable probable cause is established 'when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id.*

As discussed above, based on the circumstances of the crime scene, the victim's death appeared to be a homicide. The police discovered a victim who was shot dead. There were multiple bullet holes on the hood of the victim's vehicle and a shell casing and bullet were found outside the vehicle. Furthermore, it is undisputed that plaintiffs were the last people to be with the victim. The plaintiffs confronted the victim from all sides and demanded payment for the damage the victim had caused to Rhode's car. Leaving aside the issue of who actually pulled the trigger, plaintiffs were unquestionably the impetus to the victim's death. Before the encounter with the plaintiffs, the victim was alive. Only once they cornered him in an alley did he die. As such, the police could have reasonably believed it was proper to detain the plaintiffs and bring them in for questioning. The police would have been derelict in their duty had they not detained and questioned the people who confronted the victim within seconds of his death after they observed multiple gunshots to victim's vehicle and a shell casing found behind the victim's vehicle and next to Rhodes' car.

Moreover, the police should not be subject to liability for relying on the medical examiner. The medical examiner initially informed the police that Chandler died as a result of a

homicide with no evidence of close range firing. Defs.' 56.1 at ¶ 37. Therefore, the police acted reasonably in their detention of the plaintiffs.

Finally, the officers should be entitled to qualified immunity for the length of their detention of the plaintiffs. The law provides the officers forty-eight hours to either bring a person before a judge or let them go without charging. Here, the police complied with the law and released Rhodes and Manuel within the allotted time.

## CONCLUSION

WHEREFORE, defendants Kevin Eberle, Brian Forberg and the City of Chicago respectfully request this Court grant their motion for summary judgment and grant any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Monifa Gray, P69072


/s/ Shneur Nathan
Shneur Nathan, Att. No. 6294495

Andrew M. Hale
Avi Kamionski
Shneur Nathan
Monifa K. Gray
Andrew M. Hale & Associates
53 West Jackson, Suite 1800
Chicago, IL 60604