IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARA BRIDEWELL, RANDY MANUEL,
and LISA RHODES,

                Plaintiffs,         Case No. 08 C 4947

          v.                Hon. Harry D. Leinenweber

CITY OF CHICAGO, KEVIN EBERLE,
and BRIAN FORBERG,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the Motion is granted in its entirety.

## I. BACKGROUND

The following are the facts on which the parties agree, unless otherwise indicated.

On the evening of September 3, 2006, Walter Chandler ("Chandler") drove his sport utility vehicle into Plaintiff Lisa Rhodes' ("Rhodes") Nissan Altima on Chicago's southeast side. Chandler fled. Rhodes, her sister Sara Bridewell ("Bridewell"), Randy Manuel ("Manuel") and Anthony Watkins ("Watkins") got in Rhodes' car and gave chase. Chandler turned into what appeared to be a dead-end alley and Plaintiffs' car pulled up behind him, blocking his attempt to reverse out of the alley. Bridewell,

Rhodes and Manuel got out of the car and confronted Chandler. Bridewell approached from the passenger side of the SUV, Manuel and Rhodes from the driver's side. Rhodes reached into the SUV and took Chandler's keys out of the ignition. Bridewell at some point yelled out that Chandler had a gun and the three ran. A shot rang out, followed by Chandler's head slumping onto his steering wheel, setting off the horn.

A witness reported that minutes later, two men in white T-shirts approached the SUV. At least one appeared to have a gun, and more shots rang out, followed by the men running away. Police were called and Rhodes and Bridewell approached police when they arrived. Rhodes told them that the occupant of the SUV had shot at her and her sister, although she did not mention there were two other men in her car with her when they followed the SUV.

Later, Defendant Chicago Police detectives Kevin Eberle ("Eberle") and Brian Forberg ("Forberg") arrived on the scene and after some investigation ordered Rhodes and Bridewell taken to Area 2 police headquarters for further questioning. Manuel was picked up nearby and also taken to Area 2. Watkins was also arrested. There does not seem to be any dispute that all Plaintiffs, at least as of their first interrogations at the police station, were under arrest.

- 2 -

Bridewell was interrogated for 63 hours before being brought before a judge; she never admitted to shooting Chandler. Rhodes was questioned in a windowless room for many hours without a bathroom break and at one point urinated in the interrogation room. Police say they told her she could take bathroom breaks. Nonetheless, Rhodes told police "for a long time" she never saw Bridewell shoot Chandler until finally changing her story to say Bridewell had fired at Chandler. Pls.' Ex. AA at 2. Watkins was interrogated for 27 hours until he, too, said he saw Bridewell shoot Chandler. Manuel invoked his right to counsel.

Bridewell was charged with murder and jailed for three years while she awaited trial until prosecutors dropped the charges. Among the problems prosecutors found with the case was the fact that DNA swabs taken from a gun found in the center console of the SUV next to Chandler had not been immediately tested, and when they eventually were tested, yielded no useable results. Prosecutors also found that a lie-detector technician's questioning of Rhodes (during which she broke and changed her story) was not so much an objective lie-detector test as it was a "completely biased" interrogation. Pls.' Ex. AA, at 2. The fact that Bridewell and Rhodes voluntarily approached police when they arrived also did not necessarily reflect guilt.

All three Plaintiffs and Watkins each tested negative for gunshot residue some six hours after the shooting, although

- 3 -

police reports indicated Bridewell had, at some point, washed her hands before testing, possibly removing any gunpowder. The Cook County medical examiner was forced to revise his autopsy report two years after he completed it after Plaintiffs' autopsy expert pointed out Chandler's gunshot entry wound had deposits of soot. This, the medical examiner conceded, is an indication of close range firing. That detail is possibly supportive of Bridewell's story that Chandler had accidentally or purposely killed himself after they ran away. (The sole, fatal wound was, in fact, found to be inflicted by the gun found in Chandler's car when police arrived.) The medical examiner still believes the shooting is a homicide, however.

In 2008, Plaintiffs filed this suit. The counts that remain are each Plaintiff's unlawful arrest claims under 42 U.S.C. § 1983 against the individual Defendants (Counts I, II and III), Plaintiff Bridewell's state law malicious prosecution claim against the City and the individual Defendants (Count V) and Bridewell's intentional infliction of emotional distress claim against the City and the individual Defendants (Count VI).

Cook County prosecutors dropped the murder charge in 2009. Further facts relevant to specific counts of this suit will be addressed below.

## II. **LEGAL STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact presents a genuine issue if it is one on which a reasonable fact finder could find for the nonmoving party. *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) (internal citations and punctuation omitted).

## III. **ANALYSIS**

### A. **Counts I, II and III**
### **(42 U.S.C. § 1983 – Fourth Amendment)**

Counts I, II and III allege violations of Bridewell's, Manuel's and Rhodes' Fourth Amendment rights, respectively. Each count shares a common thread in that each alleges each Plaintiff was seized without probable cause (false arrest). Bridewell also appears to argue that her seizure was also *per se* constitutionally unreasonable because it extended past 48 hours without an appearance before a judge. The Court addresses the initial seizure of all three Plaintiffs first.

#### 1. *Probable Cause Existed to arrest All Three Plaintiffs*

"Probable cause is an absolute defense to a claim of unlawful arrest in violation of the Fourth Amendment." *Brooks v.*

- 5 -

*City of Aurora*, 653 F.3d 478, 483 (7th Cir. 2011) (internal punctuation omitted.)  Whether probable cause exists at the time of an arrest, depends on whether the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing the suspect has committed an offense.  *Id.*  Probable cause is to be determined in a practical, nontechnical manner.  *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989).  The inquiry raises questions of probabilities and the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.  *Id.*  Probable cause requires more than a bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.  *Id.*

All parties agree that at the time Defendants (or other officers not party to the suit) ordered Plaintiffs taken to the police station for questioning, Defendants knew or believed the following.

Defendant detectives were called to a shooting scene and on the way heard a radio report that two men were seen running from the scene of the shooting, an east-west alley north of 69th Street.  The brick wall of a cemetery is immediately north of the alley. Chandler, driving a sport utility vehicle, had been in a car accident with Rhodes' car.  The detectives saw Rhodes car

- 6 -

immediately behind Chandler's SUV. Both were facing east. The east end of the alley appeared to detectives to be a dead-end. (There is actually a turn-off into another north-south alley east of there that leads to 69th Street, but the sides agree the alley appeared to be a dead end to detectives.) Rhodes' car thus blocked what detectives surmised Chandler thought was his only route out of the alley. (Later acquired evidence showed Chandler tried backing up west down the alley before Rhodes' car pulled up behind him.) The detectives observed Chandler dead in the driver's seat with what appeared to be three holes in his head: one on the left side, one on the right and one in the top center (it turned out to be just two holes from one bullet that had traveled from the right side of his head and exited out the left side; there was no top center hole). A gun rested in the console next to Chandler. There were bullet holes in the car: one in the hood and another in the front bumper. Witness Everett Bonds ("Bonds") told the detectives he saw two women and a man get out of Rhodes' car and confront Chandler. Bonds heard one of the three yell "he's got a gun," saw "some of these subjects running east on 69th Street," and heard a gunshot followed by a car horn (caused by Chandler slumping forward). Pls.' Ex. D, at 9. The parties dispute the exact sequence Bonds gave regarding the running and the gunshot. Another witness, Shaun Waight ("Waight"), told detectives he heard one shot followed by the car

horn.  Two to three minutes later, two males in white T-shirts approached the SUV from the east, at least one of them holding what Waight believed was a gun.  Waight heard two gunshots, followed by the two men running back in the direction from which they had come.  A third witness, Ferrar Rahman ("Rahman"), told police that he saw Manuel exchanging words with the victim.

All this, in the Court's eyes, gave detectives probable cause to arrest all three Plaintiffs.  They had pursued the dead man into an ostensibly blind alley and confronted him.  A shot was fired and at least some Plaintiffs were seen running.  It is not unreasonable for a detective to believe they were involved, either as the trigger person or as an accomplice to murder.  Crediting the Plaintiffs' order of the running and the initial shot, as it must be on summary judgment, it would not have been unreasonable for police to believe that Chandler shot at the three and the two men who returned with guns for retribution were either Manuel and Watkins, or others sent by the four occupants of the car.  In either case, probable cause existed to believe all Plaintiffs were at least accessories to murder.  At that time, detectives did not know what shot killed Chandler, and it would not be unreasonable to assume the two men skulking through the alley shot and killed Chandler, and were accomplices of Plaintiffs, whose car had just been struck by Chandler.

That there are other plausible explanations (such as Chandler committing suicide) misses the point. *Hughes* dictates that a detective's belief be supported beyond a mere suspicion, not that it be the most likely explanation. Plaintiffs argue Defendants' belief was unreasonable because Rhodes sought out police when they arrived, an indication of innocence. While this does tend to indicate innocence, not every criminal is dumb and some are capable of misdirection. Police are allowed, particularly in this instance, to believe the incriminating evidence outweighs the favorable. It likely seemed incredible to police arriving on the scene that a man who fled from pursuers would kill himself.

Lastly, Plaintiffs argue the evidence shows Defendants' reports indicate they arrested Plaintiffs not because they believed they were involved, but only to reconcile inconsistent statements by Plaintiffs and others about how the death occurred. Defendants dispute this, but assuming, *arguendo*, it to be true, it does not help Plaintiffs. Probable cause is an objective standard, unaffected by even alternative subjective motivations. *See United States v. Hines*, 449 F.3d 808, 815 n.7 (7th Cir. 2006) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

### *2. Bridewell's Claim Regarding*
### *Her Extended Detention is Barred by Res Judicata*

Defendants argue a class-action settlement involving detentions by Chicago police without a court appearance within 48 hours of arrest prevents Bridewell's duration-of-confinement claim. *See Dunn v. City of Chicago*, No. 04-C-6804 (N.D. Ill.) Plaintiff Bridewell does not dispute the settlement covers the time period she was in detention, but argues *Dunn* covered only those cases where probable cause existed to arrest, and that Bridewell's case is therefore different. This is an implicit admission that, if there was probable cause, Bridewell's claim is barred by *res judicata*. As the Court has already determined summary judgment is proper on the issue of probable cause, the duration of confinement claim is prevented by *res judicata* and summary judgment for Defendants is appropriate.

### B. Count V (State Malicious Prosecution)

To prevail on a claim of malicious prosecution, a plaintiff must show (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff in a manner indicative of innocence; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill.

1996)).  The absence of one element precludes a plaintiff from prevailing.  *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921 (7th Cir. 2001).

Defendants argue that the in-court *nolle prosequi* of Bridewell's murder charge was done as a condition to pleading guilty on an unrelated drug and gun case and thus Plaintiff has not borne her burden of showing that the criminal prosecution concluded in a manner indicative of innocence.  *See Swick*, 662 N.E.2d at 1243 ("The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused.")

Plaintiff seems to concede that the court transcript indicates that the two cases were clearly linked, but she points to the affidavit of Bridewell's criminal counsel in that case, John W. Wyatt ("Wyatt"), which says prosecutors made clear outside the court proceedings that the murder case was being dropped on its own lack of merit unrelated to the gun and drug case.  In Wyatt's experience, such *quid pro quo* deals are always explicitly noted in court as being one element "in exchange for" the other, and this was not done in Bridewell's case.  Wyatt concedes, however, he did not object when the judge announced he "assumed" the *nolle prosequi* on the murder case was part and

- 11 -

parcel of the guilty plea in the drug and gun case. The transcript of the proceeding shows the state's attorney present said the judge was "correct" in this assumption. Most importantly, the judge in the case instructed Bridewell that if she revoked her guilty plea in the gun and drug case, the murder charge could be reinstated. Asked if she understood this, Bridewell herself replied "Yes."

Defendants object to Wyatt's affidavit as a "sham" affidavit not supported by discovery, but the Court need not rule on this point. Even if the Court accepts at face value the affidavit, it does not change the outcome. Putting aside for the moment that Wyatt, by not clarifying in court his understanding (even when asked if he wanted to add something) may have waived Bridewell's ability to claim that the two cases were not linked, Wyatt's affidavit shows only what *Wyatt* believed the circumstances were; he gives no indication of what Bridewell believed, and she is the one who made the agreement. The transcript clearly shows that she acquiesced to the linking of the murder case with the gun and drug case when she answered that she understood the murder charge could be reinstated if she revoked her plea on the gun and drug case. Thus, Plaintiff has not presented evidence that the murder charge was terminated in a manner indicative of her innocence and summary judgment on the malicious prosecution count in favor of Defendants is appropriate.

## C.  Count VI Intentional Infliction of
## Emotional Distress ("IIED")

As a preliminary matter, the Court must determine if Bridewell's IIED claim is time-barred.  Under the Illinois Tort Immunity Act, actions against city employees are limited to a one-year statute of limitations.  745 ILL. COMP. STAT. 10/8-101. Defendants say the cause of action accrued upon Bridewell's "last alleged interaction" with Defendants, which was the day she was charged, September 5, 2006.  The first Complaint in this case was filed August 29, 2008.  Criminal charges were dismissed July 22, 2009.  Defendants, citing *Evans v. City of Chicago*, contend the cause accrued in September 2006 and is therefore untimely. *Evans*, 434 F.3d 916, 934 (7th Cir. 2006) (interpreting Illinois law).  Plaintiff cites *Walden v. City of Chicago*, and claims IIED charges based on a parallel claim for malicious prosecution accrue only when state criminal proceedings are terminated, making this IIED charge timely.  *Walden v. City of Chicago*, 755 F.Supp.2d 942, 961-962 (N.D. Ill. 2010).

*Evans* also involved an IIED charge based on malicious prosecution.  The court there found that imprisonment was not a continuing injury and thus the cause of action accrued when officers had arrested and charged the plaintiff, not when the criminal proceedings terminated.  *Evans*, 434 F.3d at 935. Although *Walden* cited *Evans,* it did not explain why *Evans* did not

- 13 -

command a different outcome. *Id*. Instead, *Walden* relied on pre-*Evans* district court cases for its conclusion. This Court feels compelled to follow the Seventh Circuit. Because *Evans v. City of Chicago* mandates that the IIED charge is time-barred, summary judgment is entered for Defendants on this count.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 6/27/2012

- 14 -